UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JOHN PARKER,

      Plaintiff,

v.                                                 Case No. 5:23-cv-151-JA-PRL

SENTRY INSURANCE
COMPANY,

      Defendant.
_____

KAREN PARKER,

      Plaintiff,

v.                                                 Case No. 5:23-cv-152-JA-PRL
                                                           (consolidated)

SENTRY INSURANCE
COMPANY,

      Defendant.
_____

**ORDER**

These consolidated cases are before the Court on Defendant Sentry Insurance Company's Motions for Summary Judgment (Docs. 23 & 24), Plaintiff Karen Parker's Response and Cross Motion for Summary Judgment (Doc. 25), Plaintiff John Parker's Response and Cross Motion for Summary Judgment (Doc. 26), and Sentry Insurance Company's Replies (Docs. 32 & 33). Having

considered the parties' submissions, the Court finds that Sentry's Motions for Summary Judgment must be granted, and John and Karen's Cross Motions for Summary Judgment are denied.

## I.   BACKGROUND

John Parker, 85 years old, and Karen Parker, 83 years old, are a married couple. (Doc. 26 at 1; Doc. 25 at 1). They each applied for long-term care indemnity insurance from Sentry and were issued identical policies that became effective on April 1, 1991. (Doc. 23–1 at 2; Doc. 24–1 at 2).

The policies provide for two defined types of benefits—a "Nursing Home Care Benefit" and a "Home Health Care Benefit." Sentry obligated itself to pay these benefits "for each day of Medically Prescribed Long Term Care." (Doc. 23–1 at 6; Doc. 24–1 at 6). Additionally, an amendment to the policies provides that if the insured "would otherwise qualify for benefits under the policy, [Sentry] will consider paying for alternative services under a written Alternative Plan of Care." (Doc. 23–1 at 11; Doc. 24–1 at 11).

In September 2021, Karen Parker broke her hip and checked into a rehabilitation facility. (Doc. 23–3). In October 2021, John Parker was hospitalized for a colostomy. (Doc. 24–3). Karen and John were discharged from their respective facilities in November 2021. Shortly thereafter, each entered into a Residency Agreement with Village Veranda, a Florida licensed assisted living facility (ALF), and have since shared an apartment there. (Doc. 23–5).

2

John and Karen's agreements with Village Veranda include a monthly "Basic Service Rate"—also referred to as "rent"—and a "Personal Care Plan." (*See* Doc. 23–5 at 5–6; Doc. 23–11; Doc. 24–5 at 5–6). Village Veranda charges John the Single Occupancy Basic Service Rate of $4,950, (Doc. 24–5 at 25), while Karen is charged the Basic Service Rate of $750 because she is considered an "Additional Resident Second Person" to John's Agreement. (Doc. 23–5 at 25). The Basic Service Rate provides residents at Village Veranda with accommodations, daily meals, utility service, weekly housekeeping service, weekly laundry and linen service, social/activities programs, and staffing 24 hours a day. (*See* Doc. 23–5 at 5; Doc. 24–5 at 5). The Personal Care Plan adapts to the needs of each resident by giving them the supplementary services they require at an additional monthly cost that is established prior to moving in and continuously assessed throughout their residency as determined by "the Community." (Doc. 23–5 at 6; Doc. 24–5 at 6). Karen's personal care cost at Village Veranda ranges from $1,100 per month to $360 per month, (Doc. 23–11; Doc. 23–15), while John's ranges from $550 to $240, (Doc. 24–13; Doc. 24–14). John and Karen's monthly invoices expressly separate "rent" costs from "care" costs. (*See, e.g.,* Doc. 23–11; Doc. 24–13).

In the summer of 2022, John and Karen sent Long Term Care Claim Forms to Sentry, seeking benefits under the policies. (Doc. 23–7; Doc. 24–7). In December 2022, Sentry sent letters to John (Doc. 24–15) and Karen (Doc. 23–

13) advising them that because they would qualify for the Home Health Care Benefit under the Alternative Plan of Care, Sentry would pay the Personal Care Plan charges incurred by each of them at Village Veranda. (Doc. 24–15 at 1; Doc. 23–13 at 1). Sentry did not, however agree to pay the "rent" portion of the Village Veranda charges. Sentry asked John and Karen to sign and return the bottom of the letters if they "accept[ed] this determination." (Doc. 23–13 at 2; Doc. 24–15 at 2). John and Karen did not do so. Instead, a week later they responded through counsel, with a letter insisting that they were entitled to the Nursing Home Benefit rather than the Alternative Plan of Care benefit proposed by Sentry. (Doc. 23–14; Doc. 24–16).

Six weeks later, in January 2023, the Parkers filed identical but separate lawsuits against Sentry in state court, each alleging one count of breach of contract. (*See* Doc. 1–2 at 7–10; Doc. 1–2 in Case No. 5:23-cv-152, at 7–10). Sentry removed both state court actions to this Court in March 2023, and the cases were consolidated in October 2023. After discovery was completed, Sentry moved for summary judgment and the Parkers responded and moved for summary judgment in their favor. (*See* Docs. 23–26).

## II.   SUMMARY JUDGMENT STANDARDS

Summary judgment shall be granted if the moving party "shows that there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving

4

for summary judgment bears the burden of demonstrating that no genuine issues of material fact remain. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden "may be discharged by 'showing'—that is, pointing out to the [C]ourt—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

When presented with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). The Court's role at the summary judgment stage is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "In essence, . . . the inquiry . . . is . . . whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

### III. DISCUSSION

The Parkers acknowledge that Village Veranda is neither designated nor licensed as a Nursing Home in Florida, but they argue that Village Veranda meets the definition of "Nursing Home" in each of their policies[1] and that

---

[1] Sentry's policies with the Parkers define Nursing Home as "[a] licensed institution engaged primarily in providing nursing care to patients. Such institutions

therefore they are entitled to the Nursing Home Care Benefit, including for what Village Veranda deems "rent." Sentry, on the other hand, claims that it is entitled to summary judgment because Village Veranda does not meet the Nursing Home definition in the policies and because the Parkers' chosen living arrangement was not medically prescribed. (Docs. 23 & 24). Because Sentry's second argument is persuasive and dispositive, the Court need not decide whether Village Veranda falls within the policies' definition of Nursing Home.

A successful breach of contract claim under Florida law requires a plaintiff to establish "(1) a valid contract; (2) a material breach; and (3) damages." *Southshore Hosp. Mgmt., LLC v. Indep. Specialty Ins. Co.*, 582 F. Supp. 3d 1222, 1226 (M.D. Fla. 2022) (quoting *Abbott Lab'ys, Inc. v. Gen. Elec. Cap.*, 765 So. 2d 737, 740 (Fla. 5th DCA 2000)). "When interpreting an insurance contract under Florida law, a court should construe the contract 'in accordance with the plain language of the policy.'" *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003).

---

must: (1) maintain clinical records on all patients; (2) have established policies, developed and executed by a professional group including at least one Doctor and at least one registered professional nurse; (3) provide adequate procedures for the administration of drugs; (4) require each patient to be under a Doctor's care; and (5) have a qualified Doctor available to furnish necessary medical care in case of emergency. Nursing Home also includes an intermediate care facility; personal care facility; and custodial care facility if the facility is licensed and operating according to the laws of the licensing state. Such facility must provide as a minimum level of care, Custodial Care."

It is undisputed that the Parkers have a valid contract with Sentry and it appears that they have been damaged. But the Parkers' claims fail because based on the policies and the record evidence, the Parkers cannot establish a breach. The plain language of the policies states that Sentry will pay a benefit only pursuant to a Medically Prescribed Long Term Plan of Care. (Doc. 23–1 at 6; Doc. 24–1 at 6). Medically Prescribed Long Term Care is defined in the policies as "a service, type of care, or procedure that is specified in a plan of care prepared by a Doctor and a registered nurse and is appropriate and consistent with the Doctor's diagnosis and that could not be omitted without adversely affecting [the insured's] illness or condition." (Doc. 23–1 at 6; Doc. 24–1 at 6).

The Parkers have not presented any evidence of a medically prescribed plan of care requiring that either of them live in a licensed institution of any kind to receive the prescribed care. (*See* Doc. 23–1 at 6; Doc. 24–1 at 6). The fact that the Parkers have plans of medically-prescribed long-term care that provide for medication management and some other services does not compel Sentry to pay for non-care expenses incurred by the Parkers at Village Veranda.[2] There is

---

[2] As the Parkers note in their summary judgment filings, the Doctor who conducted a full assessment of both of them in November 2021 made future medical recommendations for them. He recommended that Karen receive "PT, OT, and home health as needed as well as medication management and assistance." (Doc. 25 at 9). And he recommended that John receive "assistance with medication management, PT, OT, and home health services." (Doc. 26 at 9). The Doctor made no mention of the need for either or both of the Parkers to reside in a facility—ALF, Nursing Home, or otherwise.

no evidence that the living-facility portion of what Village Veranda provides "could not be omitted without adversely affecting" the Parkers' "illness[es] or condition[s]."

Sentry has agreed to cover the cost of the Parkers' "Personal Care Plan[s]" at Village Veranda under the Alternative Plan of Care provision in their policies because Sentry determined that the Parkers qualify for the Home Health Care Benefit in the policies. This does not mean, as asserted by the Parkers, that they also qualify for the "Nursing Home Care Benefit." The Home Health Care Benefit and the Nursing Home Care Benefit are separately defined and are not coextensive. And although the Parkers assert that under the policies they are "free to select [their] care setting," they must do so within the parameters of what is medically prescribed if they expect Sentry to pick up the tab. (Doc. 25 at 4; Doc. 26 at 4).

In sum, based on the record before the court, Sentry is not required to cover the Parkers' non-care costs at Village Veranda. Accordingly, the Parkers' Motions for Summary Judgment (Docs. 25 & 26) are denied and Sentry's Motions for Summary Judgment are granted (Docs. 23 & 24).

## IV. CONCLUSION

Accordingly, it is **ORDERED** as follows:

1. Sentry's Motion for Summary Judgment against Karen Parker (Doc. 23) is **GRANTED**.

8

2. Sentry's Motion for Summary Judgment against John Parker (Doc. 24) is **GRANTED**.

3. Karen Parker's Cross Motion for Summary Judgment (Doc. 25) is **DENIED**.

4. John Parker's Cross Motion for Summary Judgment (Doc. 26) is **DENIED**.

5. The Clerk is directed to enter a judgment providing that Plaintiffs take nothing from the Defendant. Thereafter, the clerk shall close the case.

**DONE** and **ORDERED** in on August 8, 2024.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record